# Ongor v Highmore Group Advisors, LLC

## 2024 NY Slip Op 30603(U)

### February 25, 2024

### Supreme Court, New York County

### Docket Number: Index No. 651518/2022

### Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

----------------------------------------------------------------------------------X

YAVUZ AKIN ONGOR,

Plaintiff,

- v -

HIGHMORE GROUP ADVISORS, LLC, HIGHMORE
OPPORTUNITIES FUND (OFFSHORE) LTD., BRIAN
ALTENBURG, SOCRATES CRUZ, and AYN
INVESTMENTS LLC,

Defendants.

----------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 651518/2022 |
| MOTION DATE | |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON
MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 46, 47, 48, 49, 50, 56, 59, 60, 79, 82, 86

were read on this motion to/for            DISMISSAL           .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 51, 52, 53, 54, 55, 57, 61, 75, 83, 84, 85, 87

were read[1] on this motion to/for          DISMISSAL           .

In motion sequence number 002, defendants Highmore Group Advisors, LLC

(Highmore Advisors), Highmore Opportunities Fund (Offshore) Ltd. (Fund), and Brian

Altenburg (collectively, Highmore defendants), move to dismiss plaintiff Yavuz Akin

Ongor's complaint pursuant to CPLR 3211 (a) (1) and (7).  In motion sequence number

003, defendant Socrates Cruz moves to dismiss Ongor's complaint pursuant to CPLR

3211 (a) (1), (7) and (8).

---

[1] The court has reviewed and where appropriate may have considered additional documents mentioned in the parties' papers but omitted in this autogenerated caption for both motions.

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 1 of 29**

**Background**

The following background is taken from the complaint unless otherwise noted, and for the purposes of this motion, is accepted as true.

Ongor is a Turkish citizen residing in Malta.  (NYSCEF Doc. No. [NYSCEF] 10, Complaint ¶ 10.)  In 2001, Ongor opened an account with Citi Private Bank in New York; Cruz was his account officer.  (*Id.* ¶ 24.)  In October 2019, "Cruz began sending Ongor Highmore Advisors reports containing market commentary and investment outlooks, as well as promotional materials for specific Highmore investment opportunities."  (*Id.* ¶ 32.)  Cruz sent his emails from socrates.cruz@highmore.com and signed them "'Socrates E. Cruz / Managing Director' at Highmore Advisors, followed by the Highmore Advisors' New York business address."  (*Id.* ¶ 30.)

Highmore Advisors is an SEC-registered investment advisor and the Investment Manager for the Fund.  (*Id.* ¶ 11.)  It makes investment decisions for the Fund and provides management services such as "'record keeping of the Fund, providing reports and information to the Shareholders and liaising with the Administrator.'"  (*Id.*)  Highmore Advisors' principal place of business is in New York; the Fund is incorporated and has its registered office in the Cayman Islands.  (*Id.* ¶¶ 11-12.)  "Altenburg is the Co-Founder and Managing Partner of Highmore Advisors" and one of two directors of the Fund.  (*Id.* ¶ 13.)

In November 2019, Cruz met with Ongor in Miami to discuss investment opportunities through Highmore Advisors.  (*Id.* ¶ 26.)  In December 2019, Cruz sent Ongor documentation to open an account at JPMorgan, where Highmore Advisors would be an investment advisor, to facilitate Ongor's potential investment with Highmore

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 2 of 29**

2 of 29

[* 2]

Advisors. (*Id.* ¶¶ 33-34.) Cruz advised Ongor that the account would be in Highmore's name. (*Id.* ¶ 33.) Cruz also sent Ongor an Investment Questionnaire and Subscription Agreement (Subscription Agreement) for the Fund. (*Id.* ¶ 35.) Ongor signed the Subscription Agreement, which reflected "Ongor's agreement to subscribe to the Fund's shares," but the parameters governing any investments were to be documented in a supplemental agreement. (*Id.* ¶¶ 36-37.) Ongor also completed the documentation to open a JPMorgan account. (*Id.* ¶ 36.)

On March 18, 2020, "Cruz sent Ongor an email, on which Altenburg was copied, stating 'Welcome to Highmore!!'" and requesting that Ongor complete his subscription by wiring funds to the JPMorgan account. (*Id.* ¶ 38.) On March 23, 2020, Ongor advised Cruz that he was not pursuing an investment at that time. (*Id.* ¶ 39.) Over the next several months, Cruz "repeatedly contacted Ongor about potential investment opportunities, to offer him investment advice, and to provide him with information about the performance of certain Highmore funds." (*Id.* ¶ 40.)

On March 31, 2020, the Fund entered into a Purchase/Sale Agreement with defendant AYN Investment LLC (AYN) whereby the Fund agreed to purchase 290 Kg of gold bullion from AYN. (NYSCEF 17, Purchase Agreement.) AYN was to "sell, transfer, and deliver" the gold bullion to the Fund on or before December 1, 2020. (*Id.* ¶ 1.) The gold was located at MALCA-AMIT warehouse in Queens, New York, which was designated the place of delivery. (*Id.* ¶ 2.)

On July 30, 2020, Cruz told Ongor that Highmore Advisors' long-standing client was looking to privately sell their gold bullion at prices below market rate. (*Id.* ¶ 41.) Cruz described the opportunity as the purchase of "'physical gold at March prices (1400

**651518/2022 ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No. 002 003**

**Page 3 of 29**

3 of 29

or so) and holding for 12 months minimum. As you may know, gold trading today around 1800. . . . [w]e have the supply to cover your 2mm. . . . Highmore has been accumulating more from family.'" (*Id.*) Cruz assured Ongor in phone conversations that took place on July 30, 2020 and over the next few days that "(1) Highmore conducted substantial due diligence at every level; (2) all parties involved were reputable and prominent companies; (3) the gold would be kept for Ongor in a warehouse that specializes in such matters under the custodianship of a reputable and dependable company on which Highmore performed due diligence; and (4) and Highmore would inspect the gold bullion." (*Id.* ¶ 42.)

Ongor requested documentation for the proposed gold investment. (*Id.* ¶ 43.) On August 2, 2020, Cruz sent Ongor a fact sheet, "'encourage[d] [Ongor] to take advantage of this unique opportunity and fund account ASAP,' and stated that he '[h]ope[d] this is the beginning of a long business relationship with Highmore where we can be your family office.'" (*Id.* ¶ 46.) The fact sheet stated: "'gold bullion bars .999+ with certification numbers with the gold registry are stored at the Malca-Amit bonded warehouse in New York, which specializes in physical gold bullion storage' and that '[t]he gold is insured by Chubb and will be covered by the fund.'" (*Id.* ¶ 48.) On August 3, 2020, Cruz represented that the gold was insured by Chubb, that Highmore had verified the gold's existence, and "performed extensive due diligence on the custodian entrusted with the storage and warehousing." (*Id.* ¶ 49.) On that same date, Ongor wired $1,999,940 to the JPMorgan account. (*Id.* ¶ 52.)

On August 4, 2020, Altenburg sent Ongor the Supplement Agreement governing the investment. (*Id.* ¶ 56.) In his email, Altenburg stated that "'[w]e have the gold being

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**          **Page 4 of 29**
**Motion No.  002 003**

4 of 29

held on your behalf with locked-in prices,' and that '[t]he following have been reserved on your behalf in the fund: Total of 35 kg of .999+ gold bullion.'" (*Id.* ¶ 58.) "The Supplement Agreement states that 'Highmore will create a managed account or side pocket . . . within the Fund which will segregate your investment in the Fund" and that "the bulk of your assets invested in the Fund . . . will be allocated to purchase physical gold bullion.'" (*Id.* ¶ 60.) Ongor signed and returned the Supplemental Agreement. (*Id.* ¶ 59.)

On August 5, 2020, Highmore Advisors transferred Ongor's funds to defendant AYN to purchase the gold bullion. (*Id.* ¶ 61.) On August 13, 2020, Cruz sent Ongor a confirmation of "'payment between the fund and AYN Investments for the purchase of .999+, 35KG GOLD bullion . . . stored and insured at Malca-Amit warehouse . . . under AYN Custodianship.'" (*Id.* ¶ 62.) Cruz sent Ongor a statement for August 2020 reporting that his investment's value was $2,444,155.47. (*Id.* ¶ 65.)

On June 24, 2021, Altenburg informed Ongor of suspicions of fraud involving AYN's principal Alex Natario. (*Id.* ¶ 70.) Altenburg subsequently notified Ongor that due to suspected fraud, the Fund temporarily suspended "the calculation of the net asset value of the shares, the redemption thereof, and the payment of redemption proceeds." (*Id.* ¶ 71.) Ongor inquired about the fraud, including whether anyone had "'gone to see Gold physically under AYN Custodianship? or Malca-Amit bonded warehouse in New York?,' as well as '[w]ho appointed AYN Investments as Custodians?'" (*Id.* ¶ 72.) Ongor also sought confirmation that Chubb insured the gold. (*Id.*) Altenburg refused to answer the questions and instead referred Ongor to Highmore Advisors' outside counsel. (*Id.* ¶ 73.)

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 5 of 29**

5 of 29

On March 31, 2022, Ongor commenced this action, alleging fraud, breach of fiduciary duty, negligent misrepresentation, and negligence against moving defendants and conversion against AYN. (*Id.* ¶¶ 82-120.) Ongor alleges that Highmore Advisors, Altenburg and Cruz[2] made the following misrepresentations:

"a. Cruz's representation to Ongor on or about July 30, 2020 that the third party selling the purported gold bullion was a long-standing client of Highmore Advisors, which statement was intended to and did lend further credibility to the proposed investment;

b. Cruz's representations to Ongor on or about July 30, 2020 that the physical gold was in the process of being inspected by Highmore itself; that due diligence was conducted at every level; that the entities involved were all reputable and prominent companies; and that the gold would be kept for Ongor in a warehouse that specialized in such matters under the custodianship of a reputable and dependable company on which Highmore performed due diligence, which statements were intended to and did indue Ongor's reliance because they assured him that the gold existed and was being safeguarded by reputable and trustworthy entities that had been vetted by Highmore;

c. The representations in the Highmore fact sheet that Cruz sent to Ongor on or about August 2, 2020 that the 'gold bullion bars .999+ with certification numbers with the gold registry are stored at the Malca-Amit bonded warehouse in New York, which specializes in physical gold bullion storage' and that the gold 'is insured by Chubb and will be covered by the fund,' which statements were intended to and did induce Ongor's reliance because they lent credibility to the investment and assured Ongor that his investment would be protected;

d. Cruz's representations to Ongor on August 3, 2020 that Highmore verified the existence of the physical gold, that the gold was insured by Chubb (a leading global insurance carrier), and that Highmore had performed extensive due diligence on the custodian entrusted with the storage and warehousing of the gold, which statements were intended to and did induce Ongor's reliance by further assuring him that the gold existed, was being properly safeguarded, and that his investment would be protected; and

e. Altenburg's representation to Ongor on or about August 4, 2020 that '[w]e have the gold being held on your behalf with locked-in prices' and '[t]he following have been reserved on your behalf in the fund: Total of 35 kg of .999+ gold

---

[2] Ongor alleges that the Fund is liable for the conduct of its agent Highmore Advisors, Altenburg, and Cruz. (NYSCEF 10, Complaint ¶¶ 89 [fraud], 98 [breach of fiduciary duty], 106 [negligent misrepresentation], 111 [negligence].)

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL          Page 6 of 29
Motion No.  002 003

6 of 29

bullion,' which statements were intended to and did induce Ongor's reliance because they implied that the Highmore Defendants had actually confirmed the physical existence and possession of the gold bullion."

(*Id.* ¶¶ 84, 101.)  Ongor further alleges that Highmore Advisors, Altenburg, and Cruz

"made one or more omissions of material fact that they had a duty to disclose and that were necessary in order to make the statements they made not misleading.  They failed to disclose to Ongor that [they] did not conduct any due diligence on AYN or Natario.  They also failed to disclose that they did not physically inspect the gold bullion to verify that it existed and was in fact being stored at the Malca-Amit warehouse before soliciting Ongor's investment."

(*Id.* ¶ 86.)

**Discussion**

Dismissal Standard

On a CPLR 3211 (a) (1) motion to dismiss, the movant has the "burden of showing that the relied upon documentary evidence resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim." (*Fortis Fin. Servs. v Filmat Futures USA*, 290 AD2d 383, 383 [1st Dept 2002] [internal quotation marks and citation omitted].)  "A cause of action may be dismissed under CPLR 3211(a)(1) only where the documentary evidence utterly refutes [the] plaintiff's factual allegations, conclusively establishing a defense as a matter of law." (*Art and Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436, 438 [1st Dept 2014] [internal quotation marks and citation omitted].)  "The documents submitted must be explicit and unambiguous." (*Dixon v 105 West 75th St. LLC*, 148 AD3d 623, 626 [1st Dept 2017] [citation omitted].) Their content must be "essentially undeniable." (*VXI Lux Holdco S.A.R.L. v SIC Holdings, LLC*, 171 AD3d 189, 193 [1st Dept 2019] [internal quotation marks and citation omitted].)

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL        Page 7 of 29
Motion No.  002 003

7 of 29

INDEX NO. 651518/2022

RECEIVED NYSCEF: 02/25/2024

On a CPLR 3211 (a) (7) motion to dismiss, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994] [citation omitted].) "[B]are legal conclusions, as well as factual claims which are either inherently incredible or flatly contradicted by documentary evidence" cannot survive a motion to dismiss. (*Summit Solomon & Feldesman v Lacher*, 212 AD2d 487, 487 [1st Dept 1995] [citation omitted].) "On a CPLR 3211 motion to dismiss, a court may consider affidavits to remedy pleading problems." (*Sargiss v Magarelli*, 12 NY3d 527, 531 [2009] [citation omitted].)

A defendant may move pursuant to CPLR 3211 (a) (8) to dismiss an action for lack of personal jurisdiction. (CPLR 3211 [a] [8].) "On a motion to dismiss pursuant to CPLR 3211 (a) (8), the plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction." (*Coast to Coast Energy, Inc. v Gasarch*, 149 AD3d 485, 486 [1st Dept 2017] [citations omitted].) However, "[w]hile the ultimate burden of proof rests with the party asserting jurisdiction, the plaintiff, in opposition to a motion to dismiss pursuant to CPLR 3211 (a) (8), need only make a prima facie showing that the defendant[s] w[ere] subject to the personal jurisdiction of the Supreme Court" by demonstrating "that facts may exist to exercise personal jurisdiction over the defendant." (*Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC*, 90 AD3d 977, 978 [2d Dept 2011] [internal quotation marks and citations omitted].)

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 8 of 29**

<u>Motion Sequence 002 – Highmore Defendants' Motion to DIsmiss</u>

*Fraud*

> "The required elements of a common-law fraud claim are a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."

(*Ambac Assur. Corp. v Countrywide Home Loans, Inc.*, 31 NY3d 569, 578-79 [2018] [internal quotation marks and citation omitted].) In a cause of action based upon fraud "the circumstances constituting the wrong shall be stated in detail." (CPLR 3016 [b].) Yet, CPLR "3016 (b) should not be so strictly interpreted as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting a fraud." (*Sargiss*, 12 NY3d at 531 [internal quotation marks and citation omitted].) CPLR "3016 (b) may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct." (*Id.* [internal quotation marks and citation omitted].)

    1.  Highmore Advisors and Fund

As a preliminary matter, the Highmore defendants argue that Cruz's conduct cannot be attributed to them because the documentary evidence disproves that Cruz was Highmore Advisors' agent and instead shows that Cruz was Ongor's agent.

> "Actual authority granted to an agent to bind his principal is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all the circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware."

(*Schwartz v WFG Natl. Tit. Ins. Co.*, 192 AD3d 713, 714 [2d Dept 2021] [citation omitted].)

**651518/2022  ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 9 of 29**

9 of 29

[* 9]

Ongor alleges that Highmore Advisors authorized Cruz to use the Managing Director title and "@highmore.com" email address, conferring actual authority on Cruz. However, the Solicitation and Referral Agreement between Highmore Advisors and Cruz (Solicitation Agreement) refutes these allegations. The Solicitation Agreement clearly provides that "[n]o party shall have the authority to act for the other parties in any manner to create obligations (contractual or otherwise) … ." (NYSCEF 16, Solicitation Agreement ¶ 4.) It also disclaims any agency relationship. (*Id.*) Based on this Agreement, it cannot be inferred from the allegations in the complaint that Cruz was under the impression that he had actual authority. (*See Site Five Hous. Dev. Fund Corp. v Estate of Bullock*, 112 AD3d 479 [1st Dept 2013] [actual authority rests on the alleged agent's impression of the relationship].)

However, [i]n the absence of actual authority, a principal may still be bound by the actions of a person who has apparent authority." (*Schwartz*, 192 at 715 [citation omitted]; *Parlato v Equit. Life Assur. Socy. of the United States*, 299 AD2d 108, 113 [1st Dept 2002] [citations omitted] [holding that "a principal may be held liable in tort for the misuse by its agent of his apparent authority to defraud a third party who reasonably relies on the appearance of authority, even if the agent commits the fraud solely for his personal benefit, and to the detriment of the principal"].) Unlike actual authority, apparent authority requires an awareness of a third party of "verbal or other acts by a principal which reasonably give an appearance of authority to conduct the transaction." (*Greene v Hellman*, 51 NY2d 197, 204 [1980] [citations omitted].) "Apparent authority must be based on words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

Page 10 of 29

10 of 29

transaction; an agent cannot, though his own acts, cloak himself with apparent authority." (*1230 Park Assoc., LLC v N. Source, LLC*, 48 AD3d 355, 355-356 [1st Dept 2008].)  "The existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some conduct on the part of the principal--not the agent.  (*Indosuez Intl. Fin. B.V. v Natl. Reserve Bank*, 98 NY2d 238, 245-246 [2002].)

Ongor alleges that, when communicating with Ongor, Cruz used the email address socralez.cruz@highmore.com and signed his emails "Socrates E. Cruz / Managing Director" at Highmore Advisors followed by Highmore Advisors' New York address.  (NYSCEF 10, Complaint ¶ 31.)  He further alleges that Altenburg was copied on several of these emails.  (*Id.* ¶ 32.)  Ongor avers that neither Altenburg, nor anyone else from Highmore Advisors or the Fund, advised Ongor that Cruz was not Managing Director at Highmore Advisors or was not authorized to act on Highmore Advisors' behalf.  (NYSCEF 46, Ongor aff ¶ 7.)  Ongor also alleges that he wired $1,999,940 to a Highmore Fund account at JP Morgan.  (*Id.* ¶ 52.)

At the very least, these allegations raise an inference that Highmore Advisors conferred apparent authority on Cruz.  (*Indosuez Intl. Fin. B.V.*, 98 NY2d at 246 [finding that defendant's conduct in accepting payment into its bank account constituted an "implied representation that the deputy chairperson had authority to bind [defendant];" *see also Bardach v Weber*, 144 AD3d 553, 553 [1st Dept 2016] [finding that allegations

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 11 of 29**

11 of 29

that firm conferred partner title on defendant and permitted him to use firm's email and meet with client at firm's office raised inference of apparent authority].)[3]

The Subscription Agreement Signature Page does not refute these allegations. The fact that Ongor listed Cruz as an "Authorized Representative/Agent" is not conclusive on this issue. (*See* NYSCEF 14, Subscription Agreement Signature Page.) The fact that Ongor agreed to pay an advisory fee directly to Independent Wealth Solutions, LLC, Cruz's advisory firm, also is not conclusive on this issue. (See NYSCEF 14, Supplement Agreement ¶ 14.) "A cause of action may be dismissed under CPLR 3211(a)(1) only where the documentary evidence utterly refutes [the] plaintiff's factual allegations, conclusively establishing a defense as a matter of law." (*Art and Fashion Group Corp.*, 120 AD3d at 438 [internal quotation marks and citation omitted].)

The Highmore defendants next argue that, even if Cruz's conduct was attributable to them, it cannot form the basis for Ongor's fraud claim. Specifically, the Highmore defendants argue that Ongor fails to allege that Cruz made knowingly false statements. The Highmore defendants challenge Ongor's allegations that Cruz orally stated that (1) the Highmore defendants verified the existence of the gold to be held in the Malca-Amit warehouse, (2) the Highmore defendants conducted extensive due diligence concerning the transaction, (3) all entities involved were reputable, and (4) Chubb insured the gold; the Highmore defendants also address the allegations involving the Fact Sheet Cruz sent to Ongor.

---

[3] Altenburg's silence, despite his inclusion on emails where Cruz held himself out as Managing Director of Highmore Advisors, may also qualify as misleading conduct, raising an inference of apparent authority.

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL
Motion No.  002 003

Page 12 of 29

12 of 29

First, the Highmore defendants argue the Fact Sheet's disclosure that "[c]ertain information herein has been obtained from third party sources and, although believed to be reliable, has not been independently verified and its accuracy or completeness cannot be guaranteed. No representation is made with respect to the accuracy, completeness or timeliness of this document" shows that the Fact Sheet is not a list of statements that they were representing were true. (NYSCEF 15, Fact Sheet at 3[4] [Disclosures].) In support of their position, the Highmore defendants cite to *Steinhardt Group Inc. v Citicorp*, 272 AD2d 255 (1st Dept 2000) for the general principle that a claim for fraud can be barred by a specific disclaimer. However, in *Steinhardt*, the Appellate Division, First Department focused on disclaiming reliance. (*Id.* at 257.) Here, the Highmore defendants are attempting to apply the disclosure to the element of knowingly false statements. The court needs more than what is presented on this record to make the determination whether a professional can disclaim knowledge of falsity based on this disclosure. The briefing here is inadequate.

The Highmore defendants also argue that Ongor's reliance on the alleged misrepresentations in the Fact Sheet is unreasonable because of the disclosure.

"The law is abundantly clear in this state that a buyer's disclaimer of reliance cannot preclude a claim of justifiable reliance on the seller's misrepresentations or omissions unless (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge ... . Accordingly, only where a written contract contains a specific disclaimer of responsibility for extraneous representations, that is, a provision that the parties are not bound by or relying upon representations or omissions as to the specific matter, is a plaintiff precluded from later claiming fraud on the ground of a prior misrepresentation as to the specific matter . . . . In other words, in view of the disclaimer, no representations exist and that being so, there can be no reliance."

---

[4] NYSCEF pagination

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL          Page 13 of 29
Motion No.  002 003

13 of 29

(*Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 137 [1st Dept 2014] [citations omitted].)  The Fact Sheet's disclosure falls short of this standard, and thus, does not preclude Ongor's claim of justifiable reliance as a matter of law.  The disclosure refers to "[c]ertain information herein" rather than to any specific matters.  Moreover, the disclosure cautions that certain information in the Fact Sheet is unreliable, and thus, by its own terms does not apply to other alleged misrepresentations.  Accordingly, it is unclear to which information this disclosure refers.  Further, it cannot be determined on this record as to "whether defendants acted with superior knowledge by reason of failure to disclose key information" regarding the gold. (*Steinhardt Group, Inc.*, 272 AD2d at 257 [citation omitted].)

Putting the disclosure aside, the Highmore defendants assert that the Purchase/Sale Agreement and an email from Natario's insurance broker refute the falsity of the representations contained in the Fact Sheet that "gold bullion bars .999+ with certification numbers with the gold registry are stored at the Malca-Amit bonded warehouse in New York, which specializes in physical gold bullion storage" and are "insured by Chubb and will be covered by the fund."  (*See* NYSCEF 10, Complaint ¶¶ 48, 77[c], 84 [c].)

"The element of scienter, that is, the requirement that the defendant knew of the falsity of the representation being made to the plaintiff, is, of course, the element most likely to be within the sole knowledge of the defendant and least amenable to direct proof."  (*IKB Intl. S.A. v Morgan Stanley*, 142 AD3d 447, 450 [1st Dept 2016] [internal quotation marks and citation omitted].)  "All that is required to defeat a motion to dismiss

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL
Motion No.  002 003

Page 14 of 29

a fraud claim for lack of scienter is a rational inference of actual knowledge." (*Id.* [internal quotation marks and citation omitted].)

The March 31, 2020 Purchase/Sale agreement does not utterly refute the representations made in the August 2020 fact sheet that "gold bullion bars .999+ with certification numbers with the gold registry are stored at the Malca-Amit bonded warehouse in New York, which specializes in physical gold bullion storage." For example, just because the gold was stored in the warehouse in March 2020 does not conclusively evidence that the gold was still stored there months later in August 2020. Further, the June 15, 2020 email from Natario, forwarding a May 28, 2020 email from Natario's insurance broker confirming an umbrella policy on "all assets that … AYN Investments LLC own and or manage in Anyway shape or form in any territory Mandated by the coverage. Including physical assets Such as Gold..." does not conclusively evidence that an insurance policy on this gold was in effect in August 2020. (*See* NYSCEF 20, Natario email.)

The Highmore defendants also challenge the misrepresentations made by Cruz, both orally and via email. Specifically, Cruz represented to Ongor that (1) the gold existed,[5] (2) Chubb insured the gold, (3) the third party selling the gold was Highmore's long-standing client,[6] (4) due diligence was conducted at every level, (5) all entities involved were reputable, and (6) the gold would be kept in a specialized warehouse by

---

[5] There is also an allegation that Cruz represented that Highmore was in the process of inspecting the gold. (NYSCEF 10, Complaint ¶¶ 77[b], 84[b].) The Highmore defendants do not address this specific allegation.

[6] The Highmore defendants do not address this allegation.

**651518/2022 ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL** **Page 15 of 29**
**Motion No. 002 003**

15 of 29

a company on which Highmore performed due diligence.  (NYSCEF 10, Complaint ¶¶ 42, 49, 77[a], [b], [d], 84[a], [b], [d].)

As to the allegations that the gold existed and was insured by Chubb, the Highmore defendants make the same arguments that they did in support of dismissal of this claim based on the same representations made in the Fact Sheet.  Thus, for the reasons state above, the fraud claim based on these allegations shall proceed.[7]

The Highmore defendants also assert that the fraud claim based on Cruz's alleged misrepresentations that Highmore Advisors conducted due diligence concerning the transaction must be dismissed.  (NYSCEF 10, Complaint ¶¶ 42 ["Cruz orally assured [Ongor in a phone conversation on July 30, 2020 and the following few days that ... Highmore conducted substantial due diligence at every level"], 49 [on August 3, 2020, Cruz again represented that Highmore "performed extensive due diligence on the custodian entrusted with the storage and warehousing of the gold"], 77[b] & [d] [repeat allegations], 84 [b] & [d] [repeat allegations].)  In support of dismissal, the Highmore defendants argue that the June 15, 2020 insurance email utterly refutes these misrepresentations.  (NYSCEF 20, Natario email.)  The court disagrees as the email does not refute this allegation.  For example, it does not evidence that the Highmore defendants reached out to Natario to inquire about the gold to conduct due diligence.  Further, whether the gold was, in fact, insured is just one area requiring investigation.  For example, the email does not refute the allegations that the Highmore defendants

---

[7] The court notes that the disclosure in the Fact Sheet specifically applies only to the statements made in the Fact Sheet, so the disclosure would not apply to statements separately made by Cruz.  (NYSCEF 15, Fact Sheet at 3 [Disclosure] ["The information contained herein ..."].)

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**         **Page 16 of 29**
**Motion No.  002 003**

16 of 29

performed extensive due diligence on the warehouse custodian or that they inspected the gold.

Regarding Cruz's alleged July 30, 2020 misrepresentation that the entities involved in the gold investment were reputable and prominent companies, it is a nonactionable opinion. (NYSCEF 10, Complaint ¶¶ 77[b], 84 [b].) The court agrees with the Highmore defendants that this statement is an "opinion that provide[s] no basis for a fraud claim." (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 179 [2011] [citation omitted].) Although "statements of opinion may nevertheless be actionable as fraud if the plaintiff can plead and prove that the holder of the opinion did not subjectively believe the opinion at the time it was made and made the statement with the intent to deceive or if the speaker subjectively was aware that there was no reasonable basis for the opinion" (*Fed. Home Loan Bank of Boston v Moody's Corp.*, 68 Misc 3d 615, 623 [Sup Ct, NY County 2019] [internal quotation marks and citation omitted]), there is no allegation that Cruz did not believe this at the time he made this statement. Further, Ongor's allegation that Cruz failed to conduct due diligence is insufficient to bring this nonactionable opinion within the purview of this exception.

Ongor also alleges that Altenburg made misrepresentations on behalf of Highmore Advisors and the Fund. Specifically, Ongor alleges that, on August 4, 2020, Altenburg represented that "[w]e have the gold being held on your behalf with locked-in prices" and "[t]he following have been reserved on your behalf in the fund: Total of 35 kg of .999+ gold bullion." (NYSCEF 10, Complaint ¶ 84 [e].) The Highmore defendants argue these statements were not false or at least not knowingly so because the Purchase/Sale Agreement evidences that the Fund reserved the gold. As discussed

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 17 of 29**

[* 17]

17 of 29

above, the Purchase/Sale Agreement does not utterly refute this allegation. However, this statement cannot support Ongor's fraud claim as there was no reliance on this statement because Ongor transferred the funds making the investment the day before this statement was made. (NYSCEF 10, Complaint, ¶¶ 52; *High Tides, LLC v DeMichele*, 88 AD3d 954, 958 [2d Dept 2011] [citation omitted] [holding that representations cannot form the basis for a fraud claim where they were made after the investment as reliance is absent].)

Finally, the Highmore defendants argue that Ongor fails to allege that the misrepresentations directly caused his loss (loss causation), and instead alleges that AYN's theft of his funds or the gold caused his loss. The court disagrees because Ongor's loss of his investment, as alleged, "might reasonably be expected to result from the reliance" on the alleged misrepresentations. (*MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 87 AD3d 287, 295 [1st Dept 2011] [internal quotation marks and citations omitted].) Moreover, defendant's conduct "need not be the sole proximate cause of damages for a fraud claim to be stated." (*Bullen v Sterling Valuation Group, Inc.*, 67 Misc 3d 1227[A], 2020 NY Slip Op 50653[U], *4 [Sup Ct, NY County 2020].)

The court notes that Ongor also alleges that Highmore Advisors and the Fund made omissions of material fact by failing to disclose that the Highmore defendants did not conduct any due diligence by not physically inspecting the gold to verify its existence. (NYSCEF 10, Complaint ¶ 86.) The Highmore defendants do not address this allegation.

Thus, the fraud claim against Highmore Advisors and the Fund is only dismissed to the extent that it is based on the allegations that Cruz misrepresented that the entities

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 18 of 29**

18 of 29

involved in the gold investment were reputable and prominent companies and Altenburg's alleged misrepresentations.

2. Altenburg

As the alleged misrepresentations made by Altenburg cannot support a fraud claim the court need only address whether Altenburg is personally liable for his alleged omissions, failing to disclose that the Highmore defendants did not conduct any due diligence by not physically inspecting the gold to verify its existence. (NYSCEF 10, Complaint ¶ 86.)

In fraud actions, "corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally." (*Polonetsky v Better Homes Depot, Inc.*, 97 NY2d 46, 55 [2001] [citation omitted].) However, here the complaint is devoid of any allegations that Altenburg participated in or had knowledge of any fraud. Ongor fails to allege that Altenburg "engaged in the misconduct personally." (*Beatrice Invs., LLC v 511 9th LLC*, 177 AD3d 551, 552 [1st Dept 2019]; *see also Peguero v 601 Realty Corp.*, 58 AD3d 556, 558 [1st Dept 2009] [internal quotation marks and citations omitted] ["a corporate officer who participates in the commission of a tort may be held individually liable" where they personally participated in misrepresentation]; *Michaels v Lispenard Holding Corp.*, 11 AD2d 12, 14 [1st Dept 1960] [internal quotation marks and citations omitted] ["Corporate officers or agents are personally liable for those torts they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body"]; *Palomo v 175th St. Realty Corp.*, 101 AD3d 579, 580 [1st Dept 2012] [to be held individually liable a defendant must "personally participate[] in any malfeasance or

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No. 002 003**

**Page 19 of 29**

19 of 29

misfeasance constituting an affirmative tortious act"].) Accordingly, the fraud claim is dismissed as against Altenburg as are the claims against him for fiduciary duty, negligent misrepresentation and negligence.

*Breach of Fiduciary Duty*

Ongor alleges that Altenburg and Highmore Advisors owed him a fiduciary duty as his investment advisors and breached that duty by making false statements and failing to conduct due diligence as to his gold investment. As to the Fund, Ongor does not allege that it owed a duty, but rather, alleges the Fund is liable for Alterburg and Highmore Advisors' breaches of their duties because they are the Fund's agents. (*See* NYSCEF 10, Complaint ¶ 98.)[8]

"To state a claim for breach of fiduciary duty, plaintiffs must allege that (1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct." (*Burry v Madison Park Owner LLC*, 84 AD3d 699, 699-700 [1st Dept 2011] [citations omitted].) A breach of fiduciary duty claim must be pleaded with particularity. (*See Schroeder v Pinterest Inc.*, 133 AD3d 12, 25 [1st Dept 2015]; CPLR 3016 [b].)

"[A] fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other . . . . Ascertaining the existence of a fiduciary relationship inevitably requires a fact-specific inquiry." (*Roni LLC v Arfa*, 18 NY3d 846, 848 [2011] [internal quotation marks and citations omitted].) "Professionals such as investment advisors, who owe fiduciary duties to their clients, 'may be subject

---

[8] The Highmore defendants do not address this allegation, and thus, this claim proceeds as to the Fund.

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL
Motion No.  002 003

Page 20 of 29

to tort liability for failure to exercise reasonable care, irrespective of their contractual duties,' since in 'these instances, it is policy, not the parties' contract, that gives rise to a duty of care.'" (*Warshaw v Mendelow*, 2011 NY Slip Op 33972[U], *22-23 [Sup Ct, NY County 2011], quoting *Sommer v Federal Signal Corp.*, 79 NY2d 540 [1992].)

*Fiduciary Duty*

Ongor alleges that as his investment advisors, Highmore Advisors and Altenburg owed him fiduciary duties. (NYSCEF 10, Complaint ¶ 94.) The Highmore defendants argue that (i) the Supplement Agreement shows that Ongor retained Independent Wealth Solutions, LLC to serve as his investment advisor and (ii) the Subscription Agreement shows Highmore Advisors was an investment manager for the Fund.

The Supplement Agreement, which states that Ongor "agrees to pay an Advisory Fee . . . [which] shall be remitted to Independent Wealth Solutions, LLC [IWS]" by the fund administrator (NYSCEF 14, Supplement Agreement ¶ 14), does not utterly refute the allegation that Highmore Advisors and Ongor had a fiduciary relationship. "In determining whether a fiduciary relationship exists, a court will look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge." (*Sergeants Benevolent Assn. Annuity Fund v Renck*, 19 AD3d 107, 110 [1st Dept 2005] [internal quotation marks and citation omitted].) The fact that Ongor agreed to remit payment of an advisory fee to another entity does not determine the relationship between Ongor and Highmore Advisors. Further, even though the Subscription Agreement defines Highmore Advisors as the Fund's Investment Manager (NYSCEF 12, Subscription Agreement ¶ 1.3), Highmore defendants proffer no authority

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL
Motion No.  002 003

Page 21 of 29

21 of 29

to support its proposition that Highmore Advisors could not have been Ongor's fiduciary at the same time.

Highmore defendants' challenge to the sufficiency of the allegations of the fiduciary relationship is unpersuasive. Plaintiff alleges that Cruz, on behalf of Highmore Advisors, repeatedly communicated with Ongor via WhatsApp, email, and in person over the course of nearly a year for the purpose of soliciting Ongor's investment into Highmore Advisors' opportunities, offered Ongor investment advice, and provided information about performance of certain Highmore funds. (*See* NYSCEF 10, Complaint ¶¶ 32, 40.) Cruz advised Ongor that "a longstanding client of Highmore Advisors was in immediate need of liquidity and was looking to privately sell its physical gold bullion at prices below the market rate" and "described the opportunity as a 'special situation with one of our top families,' which presented a 'locked in profit investment opportunity on gold.'" (*Id.* ¶ 41.) Cruz "'encourage[d] [Ongor] to take advantage of this unique opportunity and fund account ASAP,' and stated that he '[h]ope[d] this is the beginning of a long business relationship with Highmore where we can be your family office.'" (*Id.* ¶ 46.) Cruz also represented to Ongor that Highmore conducted substantial due diligence at every level with respect to the gold investment and that Highmore would actually inspect the gold. (*Id.* ¶ 42.) Prior to Ongor's investment, Cruz represented that Highmore verified the existence of the physical gold. (*Id.* ¶ 49.) Ongor alleges that "[g]iven their relationship and Cruz's superior knowledge and access to information about the proposed investment, Ongor trusted Cruz and reasonably relied on his representations." (*Id.* ¶ 51.) Thus, Ongor sufficiently "allege[s] [Highmore Advisors] sought and received [his] trust, placing the defendants in an advantageous

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 22 of 29**

22 of 29

position vis-à-vis" Ongor. (*I.B. Trading, Inc. v TriPoint Global Equities, LLC*, 280 F Supp 3d 524, 542 [SD NY 2017] [citation omitted]; *see also Roni LLC*, 18 NY3d at 848-49 [investors sufficiently alleged fiduciary relationship with defendants who planned venture, solicited investments, were in best position to disclose material facts to investors, and assumed position of trust and confidence].)

The argument that Highmore Advisors owed no fiduciary duties to Ongor because it did not have discretionary control over Ongor's account is unavailing as this claim is predicated on Highmore Advisors' conduct in inducing rather than managing Ongor's investment. (*See* NYSCEF 10, Complaint ¶ 96 [Highmore Advisors "induced Ongor to invest nearly $2 million in the . . . Fund based on false and misleading statements of material fact and failed to conduct appropriate due diligence into the entities involved with the investment that they were recommending to Ongor or the gold bullion itself"].) Further, the court agrees with plaintiff that the cases cited by the Highmore defendants do not establish that an investment advisor can only owe a fiduciary duty when it has discretionary control of a customer's account.

*Negligent Misrepresentation*

"The elements of a claim for negligent misrepresentation are: (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." (*MatlinPatterson ATA Holdings LLC v Fed. Express Corp.*, 87 AD3d 836, 840 [1st Dept 2011] [internal quotation marks and citations omitted], *lv denied* 21 NY3d 853 [2013].)

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL
Motion No. 002 003

Page 23 of 29

23 of 29

First, the Highmore defendants argue that this claim fails because, regarding the special or privity-like relationship, Ongor's allegations rest on the fiduciary duty and that claim fails. This argument is inapplicable as the issue of whether Highmore Advisors and the Fund owed a fiduciary duty remains open.

Second, the Highmore defendants argue that, like the fraud claim, they did not provide false information to Ongor. This argument fails for the same reasons discussed above as the argument regarding reasonable reliance.

*Negligence*

The Highmore defendants argue the negligence claim rests on the same allegations as the breach of fiduciary duty claim and thus must be dismissed as duplicative. The court agrees. In the negligence claim, Ongor alleges that Highmore Advisors, Altenburg and Cruz "failed to conduct any due diligence regarding the gold bullion investment before recommending it to Ongor and soliciting his investment." (NYSCEF 10, Complaint ¶ 109.) In the breach of fiduciary duty claim, Ongor alleges that same defendants "failed to conduct appropriate due diligence into the entities involved with the investment that they were recommending to Ongor or the gold bullion itself." (*Id.* ¶ 96.) Ongor does not allege any distinct damages on these two claims. Therefore, the negligence claim is dismissed as duplicative. (*NYAHSA Servs., Inc., Self-Insurance Trust v People Care Inc.*, 167 AD3d 1305, 1309 [3d Dept 2018] [negligence counterclaim appropriately dismissed as duplicative of breach of fiduciary duty counterclaim because both were based on same set of facts and theories and sought identical damages].)

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 24 of 29**

24 of 29

[* 24]

Motion Sequence 003

*Personal Jurisdiction*

Cruz asserts that the court lacks personal jurisdiction over him because he is a Florida citizen, and while he performed services for Highmore Advisors in soliciting Ongor, such services were performed outside New York.[9]

Ongor alleges that this court has personal jurisdiction over Cruz pursuant to CPLR 302 (a) (1) and (2),[10] which provides:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . . ."

"[P]roof of one transaction in New York is sufficient to invoke jurisdiction [pursuant to CPLR 302 (a) (1)], even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." (*Matter of James v iFinex Inc.*, 185 AD3d 22, 29 [1st Dept 2020] [internal quotation marks and citation omitted].) "What constitutes a 'transaction of business' has not been precisely defined, but it is clear that under the right circumstances, a 'single act' may constitute a transaction within the ambit of the long-arm statute." (*Opticare Acquisition Corp. v Castillo*, 25 AD3d 238, 243 [2d Dept 2005].) The lack of an in-state physical presence is not

---

[9] At this stage, the court will not consider Cruz's affidavit, which "does not constitute documentary evidence within the meaning of CPLR 3211 (a) (1)." (*Disbrow v Normandie Condominium*, 201 AD3d 462, 463 [1st Dept 2022] [citation omitted].)

[10] In opposition to this motion, Ongor chose not to address CPLR 302 (a) (2), stating "Because it is clear the Court has jurisdiction over Cruz pursuant to CPLR 302(a)(1), it need not reach the question whether Cruz is also subject to jurisdiction under CPLR 302(a)(2)." (NYSCEF 57, Memo in Opp at n 4.)

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL        Page 25 of 29
Motion No.  002 003

25 of 29

[* 25]

dispositive of the question whether a non-domiciliary is transacting business in New York. "Purposeful activities are volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York." (*Paterno v Laser Spine Inst.,* 24 NY3d 370, 376 [2014] [internal quotation marks and citations omitted].) Further, "a 'substantial relationship' must be established between a defendant's transactions in New York and a plaintiff's cause of action in order to satisfy the nexus requirement of the statute." (*Johnson v Ward*, 4 NY3d 516, 519 [2005] [citation omitted].)

Even affording Ongor the benefit of every possible favorable inference, he fails to make "a sufficient start in demonstrating . . . [personal] jurisdiction" based on CPLR 302 (a) (1). (*Avilon Auto. Group v Leontiev*, 168 AD3d 78, 89 [1st Dept 2019] [internal quotation marks and citation omitted].) Ongor attempts to pin jurisdiction on the allegation that Cruz entered into the Solicitation Agreement with a company whose office is located in New York, subjecting Cruz to New York jurisdiction. However, this alone does not satisfy the jurisdictional requirements of the CPLR. The two cases Ongor relies on are distinguishable.

In *George Reiner & Co. v Schwartz*, 41 NY2d 648 (1977), the Court of Appeals subjected a Massachusetts resident to New York jurisdiction where he entered into an employment contract with a New York employer. Unlike Cruz, the defendant in George Reiner was physically present in New York when the contract was executed. The Court of Appeals found that the defendant purposefully availed himself of the privilege of

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

**Page 26 of 29**

conducting activities in New York by "coming into New York purposefully seeking employment, his interview and his entering into an agreement with a New York employer." (*George Reiner & Co.*, 41 NY2d at 653.) Also, unlike here, the employment contract was the subject of the action.

In *Opticare Acquisition Corp. v Castillo*, 25 AD3d 238, 244 (2d Dept 20050, the nondomiciliary defendants "transacted business here by entering into agreements which, in each case, gave rise to substantial relationships, both substantively and temporally, with a New York employer." Again, the employment agreements were the subject of the action.

Even if Cruz's act of entering into the Solicitation Agreement was a purposeful activity, there is no showing that ... there was the required nexus between the ... New York 'business' and the present cause of action." (*Talbot v Johnson Newspaper Corp.*, 71 NY2d 827, 829 [1988].) Here, the claims against Cruz arise out of his alleged misrepresentations that he made outside New York in soliciting the investment of Orgor who resides in Malta. "[T]he relationship between the claim and transaction is too attenuated." (*Johnson v Ward*, 4 NY3d 516, 520 [2005].) Thus, the complaint against Cruz is dismissed.

The court has considered the parties' remaining arguments and finds them without merit or otherwise not requiring an alternate result.

Accordingly, it is

ORDERED that Brian Altenburg's motion to dismiss the complaint is granted, and the complaint is dismissed in its entirety as against this defendant, with costs and

**651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**
**Motion No.  002 003**

Page 27 of 29

disbursements to this defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of this defendant; and it is further

ORDERED that Highmore Group Advisors, LLC and Highmore Opportunities Fund (Offshore) Ltd.'s motion to dismiss the complaint is granted, in part, to the extent that the fraud claim is dismissed to the extent it is predicated on Brain Altenburg's August 4, 2020 statements and Socrates Cruz's July 30, 2020 statement that "the entities involved were all reputable and prominent companies; and it is further

ORDERED that Socrates Cruz's motion to dismiss the complaint is granted and the complaint is dismissed in its entirety as against this defendant, with costs and disbursements to thisd defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of this defendant; and it further

ORDERED that the action is severed and continued against the remaining defendants; and it is further

ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further

ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein; and it is further

ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website)]; and it is

**651518/2022 ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL**      **Page 28 of 29**
**Motion No. 002 003**

28 of 29

[* 28]

ORDERED that defendants Highmore Group Advisors, LLC and Highmore Opportunities Fund (Offshore) Ltd. are directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further

ORDERED that counsel are directed to submit a joint proposed Part 48 Preliminary Conference Order within 30 days after service of a copy of this order with notice of entry.  If the parties cannot agree, they may submit competing proposed PC Orders.

|  |  |
|---|---|
| 2/25/2024 | ANDREA MASLEY, J.S.C. |
| DATE |  |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION |  |
|---|---|---|---|
|  | ☐ GRANTED ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |  |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

651518/2022   ONGOR, YAVUZ AKIN vs. HIGHMORE GROUP ADVISORS, LLC ET AL
Motion No.  002 003

Page 29 of 29

29 of 29